IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **FISERV, INC.,** § | |
| § | |
| **Plaintiff** § | |
| § | |
| v. § | **Case Number 3:24-cv-2238** |
| § | |
| **PALADIN FS, LLC and AARON SILVA,** § | |
| § | |
| **Defendants** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Plaintiff Fiserv, Inc., acting by and through its counsel, files this Complaint against Defendants, and for causes of action would respectfully show as follows:

### PARTIES

1. Plaintiff Fiserv, Inc. is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.

2. Defendant Paladin fs, LLC is a Texas limited liability company with its principal place of business in Dallas, Texas.

3. Upon information and belief, Defendant Aaron Silva is a resident of Texas and this judicial district.

### JURISDICTION AND VENUE

4. This is an action for trademark infringement and false advertising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

5. Defendants engaged in trademark infringement in this judicial district.

6. Defendants are engaging in false advertising in this judicial district.

## STATEMENT OF FACTS

7. Fiserv is a leading provider of financial technology solutions. Since 1984, Fiserv provided and continues to provide financial technology solutions for financial institutions, such as banks and credit unions, under its FISERV trademark. Fiserv works with financial institutions in America and around the world.

8. Today, Fiserv is among the top three providers to U.S. banks, and earns billions of dollars in revenue under its FISERV brand each year.

9. Fiserv receives recognition from national organizations. For example, in March 2024, Fiserv was recognized as one of *Fortune* America's Most Innovative Companies. The United Way awarded Fiserv Innovation Center the 2023 Impact Award. Fiserv was named a finalist for the Finovate Awards in the Best Back-Office/Core Services Solution category, and the Merchant Acquirer of The Year at the Merchant Payments Ecosystem Awards.

10. Fiserv engages in programs to improve the business community under its FISERV name. For example, Fiserv joined with Rutgers University-Newark to create the Fiserv-RU-N Program for Inclusive Innovation to provide scholarships for Rutgers military veterans and business school students, and provide training to prepare students for internships and jobs. Fiserv partnered with organizations like Mechanics and Farmers Bank and the Milwaukee Bucks to provide grants to small businesses. Fiserv partnered with Howard University to create PitchHU, which provides an incubator program for minority-owned businesses.

11. The FISERV brand is also well known to sports fans. Popular sports arena FISERV FORUM is named for Fiserv and incorporates FISERV branding.

12. Fiserv owns U.S. Trademark Registration Nos. 2,023,859; 3,802,552; and 7,150,875 for its FISERV mark. This includes the FISERV word mark, as well as the FISERV logo shown below:



Plaintiff also owns FISERV trademark registrations for its word mark and logo mark in numerous countries around the world.

13. Fiserv uses an orange and white color scheme as part of its branding. This color scheme can be seen on Fiserv's website, social media pages, logos, trade show branding, and office branding.












14. As a result of decades of hard work, innovative product development, and high quality customer service, Fiserv's FISERV mark is well known and well respected in the United States.

15. One set of products and services sold under the FISERV brand is core banking software and services. Core banking software and services are used by banks to provide primary banking functions to their customers. For example, core banking software allows for opening and managing accounts, transferring money, depositing and withdrawing funds, and issuing loans.

16. Defendant Paladin describes itself as "the original consultancy dedicated toward negotiating Core IT and FinTech contracts." Defendant Paladin also provides "hard market intelligence and pricing data" for "Core and FinTech contracts."

17. Upon information and belief, some of the "hard market intelligence" Defendant Paladin provides to third parties is done in violation of non-disclosure agreements Defendant Paladin entered into with various financial technology providers.

18. Defendant Silva is the president of Defendant Paladin and is personally involved in the actions of Defendant Paladin. Defendants bill Defendant Silva as the "Innovator of The Paladin Blue Book," the collection of intelligence information that includes materials covered by non-disclosure agreements.

19. In or around May 2024, one of Fiserv's customers reached out to Fiserv about a marketing email that customer received. The customer believed that the email was associated with Fiserv and was about a Fiserv service. Therefore, the customer contacted their Fiserv representative for more information.

20. The May 2024 email, however, was not sent by or on behalf of Fiserv. Instead, it was sent by Defendant Silva at Paladin without Fiserv's knowledge or permission.

21. That the customer was confused is not surprising when viewing the May 2024 email. A screenshot showing the opening of the email is shown below. (The recipient has been redacted).



As seen in the image, the email opens with a large display of the federally registered FISERV logo. The logo is the largest term on the page and is colored orange. Not only is this shade of orange part of Fiserv's trade dress and registered logo mark, orange is also attention catching and draws the eye. Customers viewing this email are likely to – and did – believe that it had an authorized connection to Fiserv. Indeed, the email does not include any information through which a reasonable person could understand that the sender had no affiliation with Fiserv.

22. The May 2024 email directed the recipients (i.e. Fiserv's customers) to the website https://fiservquotecheck.com. The following landing page is available at that URL:



PLAINTIFF'S ORIGINAL COMPLAINT                                              PAGE 6

23. The fiservquotecheck.com website includes co-branding at the top of the website, showing Defendant Paladin's logo beside Fiserv's federally registered logo.

24. The fiservquotecheck.com website includes the statement "quote check services for fiserv.," where FISERV is displayed in substantially larger letters in the color orange.

25. There is a button that reads "Fiserv Quick Quote Check" in the upper right hand corner of the fiservquotecheck.com website. This button is shown in the same orange color as the FISERV logo marks. This is not unique to the "Quote Check" button. The majority of the links on the website at fiservquotecheck.com are displayed in the orange and white color scheme Fiserv uses in its branding.

26. Any reasonable consumer, viewing the website at fiservquotecheck.com, is likely to believe that the page and the services thereon originate from, are associated with, or are endorsed by Fiserv.

27. Customers and Fiserv employees have been actually confused by Defendants' use of the FISERV name and logo on the website at fiservquotecheck.com. In addition to the customer who contacted Fiserv after learning of Defendants' use of FISERV in the May 2024 email, the initial Fiserv employees who were assisting the customer believed that the May 2024 message and fiservquotecheck.com website were made by a Fiserv licensee. It was only when the employee sought to learn more about Defendants in order to answer the customer's questions that the employee learned Defendants were not authorized Fiserv licensees.

28. Defendants' use of the FISERV brand in the May 2024 email and on the fiservquotecheck.com website uses more of the FISERV mark necessary to reasonably identify Fiserv or its products.

29. Defendants' use of the FISERV brand in the May 2024 email and on the fiservquotecheck.com website displays the FISERV brand in a manner to suggest sponsorship by Fiserv such as, for example, by displaying the Fiserv logo as if it was a joint provider of the services and utilizing Fiserv's orange and white color scheme.

30. On June 5, 2024, Fiserv wrote to Defendants, requesting they cease their confusing use of Fiserv's name and brand. To date, Defendants have not provided a substantive response to that letter.

31. On or around July 23, 2024, Defendant Paladin sent an email to Fiserv's customers that contained numerous false statements and innuendos.

32. Defendant Paladin's July 2024 communication utilizes the subject line "Fiserv is About to Pull A Fast One on You." The phrase "pulling a fast one" is a colloquialism that means cheating or tricking someone. Thus, Defendant Paladin accused Fiserv of planning to cheat Fiserv's customers.

33. This statement is false. Fiserv deals with its customers fairly and does not cheat them.

34. Defendant Paladin's July 2024 communication states that "Fiserv has definitive plans to consolidate all Fiserv Premier, Precision and Cleartouch clients onto a single (unnamed) platform in the next 18-24 months."

35. This statement is false. Fiserv does not have "definitive plans" to "consolidate" these platforms in the next 18-24 months.

36. Defendant Paladin's July 2024 communication states that "these are uncertain times for big core processing vendors" that "results in poor customer service and a lack of innovation."

The only core processing vendor discussed in the July 2024 communication is Fiserv. Defendant Paladin implies that Fiserv does or will provide "poor customer service and a lack of innovation."

37. This statement is false. Fiserv provides strong customer service and wins awards for its innovation. Defendant Paladin provides no support for its statement.

38. Defendant Paladin's July 2024 communication tells Fiserv's customers that Fiserv will "force you to conform."

39. This statement is false. Fiserv does not force any customer to use any product. Fiserv also offers a variety of core processing systems from which customers can choose; these selections are not limited to Premier, Precision, and Cleartouch. Fiserv customers may also obtain customizations of the core banking products they purchase from Fiserv. The customizations allow Fiserv's products to be adjusted to meet a customer's specific needs.

40. After reciting the false statements discussed herein, Defendant Paladin attempted to sell its services to Fiserv's customers.

41. Defendant Paladin misrepresented the nature, characteristics, and qualities of Fiserv's products and commercial activities in commercial advertising.

42. Defendant Paladin's false statements about Fiserv's business practices harm Fiserv's business reputation.

43. On July 25, 2024, Fiserv again wrote to Defendant Paladin, requesting Defendant Paladin cease engaging in violations of Fiserv's rights. Upon receipt of the letter, Defendant Paladin's counsel represented that he would contact Plaintiff's counsel within 24 hours. When Defendant Paladin's counsel did not further respond, Plaintiff's counsel attempted to follow up. Plaintiff's counsel did not receive a response to the follow-up inquiry and, to date, Defendant Paladin has not provided a substantive response to the July 2024 letter.

44. On August 22, 2024, Fiserv wrote once more to Defendants, requesting Defendants provide a response to Fiserv's letters by August 27, 2024. When Defendants once again failed to provide a substantive response, Fiserv had no option but to begin final preparations to file this suit. The following afternoon, Defendants' counsel's paralegal wrote to Plaintiff's counsel and asserted that Defendant's counsel would provide a response the following day. Plaintiff's counsel agreed to wait until 3 p.m. on August 29 to receive the response, but explained that the lawsuit would be filed if Defendants again failed to substantively respond. As of 3 p.m. central time on August 29, 2024, no substantive response was provided.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

45. Plaintiff realleges the foregoing paragraphs.

46. Fiserv owns the rights in the FISERV federally registered trademarks.

47. Without Fiserv's permission, Defendants Paladin and Silva used Fiserv's registered trademarks in a manner to suggested Defendants' services were associated with or endorsed by Fiserv in email communications and on the website fiservquotecheck.com.

48. Defendants targeted their use of Fiserv's registered trademarks at Fiserv customers in email communications and on the website fiservqutoecheck.com to encourage Fiserv's customers to purchase Defendants' services.

49. Defendants' use of the FISERV name and logo, as well as the manner of that use, is such that a reasonable consumer is likely to be confused, mistake, or deceived and believe that Defendants are affiliated with or endorsed by Fiserv.

50. Defendants' use of the FISERV name and logo, as well as the manner of that use, caused actual confusion among Fiserv customers and Fiserv employees.

51. Defendants' use of the FISERV name and logo is intentional and malicious.

52. Defendants' use of the FISERV name and logo are contrary to law and harm Plaintiff.

## SECOND CAUSE OF ACTION
## CYBERSQUATTING
## 15 U.S.C. § 1125

53. Plaintiff realleges the foregoing paragraphs.

54. Defendants registered the URL fiservquotecheck.com without Fiserv's permission.

55. The URL fiservquotecheck.com includes the federally registered FISERV trademark.

56. The webpage displayed at fiservquotecheck.com uses the FISERV name and logo, as well as Fiserv's stylization, to give the impression that the page is associated with or endorsed by Fiserv.

57. The webpage caused confusion among Fiserv customers and Fiserv employees, who believed that Defendants had an affiliation with Fiserv when Defendants did not.

58. Defendants registered and used the URL fiservquotecheck.com in bad faith to profit from the FISERV brand without Fiserv's permission.

59. Defendants' use and ownership of the URL fiservquotecheck.com is contrary to law and harms Plaintiff.

## THIRD CAUSE OF ACTION
## FALSE ADVERTISING
## 15 U.S.C. § 1125

60. Plaintiff realleges the foregoing paragraphs.

61. Defendant Paladin sent communications to Fiserv's customers including false statements about Fiserv.

62. Defendant Paladin's false statements included innuendos that Fiserv was seeking to cheat its clients and misrepresented Fiserv's products and services.

63. Defendant Paladin's false statements were made in commercial advertising, namely, in a marketing email sent to Fiserv's customers.

64. Defendant Paladin's false statements harm Fiserv and its reputation.

65. Defendant Paladin's false statements were intentionally and maliciously made with knowledge of their falsity.

## FOURTH CAUSE OF ACTION
## DEFAMATION

66. Plaintiff realleges the foregoing paragraphs

67. Defendant Paladin made false statements about Fiserv's business practices to Fiserv's customers.

68. Fiserv's customers believed Defendant Paladin and contacted Fiserv about the statements.

69. Defendant Paladin's false statements harmed Fiserv's business reputation with Fiserv's customers.

70. Defendant Paladin's false statements were made with knowledge of their falsity or with reckless disregard for the truth.

71. Defendant Paladin's false statements harmed Fiserv and amount to defamation.

## PRAYER FOR RELIEF

142. WHEREFORE Plaintiff respectfully prays the Court to:

   a. Find that Defendants' use of Plaintiff's registered trademarks amounts to trademark infringement and unfair trade practices;

   b. Find that Defendants are engaging in cybersquatting;

c. Find that Defendant Paladin engaged in false advertising and defamation by making false statements about Plaintiff's business practices to Plaintiff's customers;

d. Permanently enjoin Defendants from using Plaintiff's trademarks in any confusing or unfair way, to include the uses complained of herein;

e. Order Defendants to transfer the URL fiservquotecheck.com to Plaintiff;

f. Order Defendant Paladin to provide a retraction of its false statements to the customers who received the July 2024 email;

g. Find that Defendants' acts were willful and intentional;

h. Award Plaintiff actual damages;

i. Disgorge Defendant's profits;

j. Award Plaintiff treble damages;

k. Award Plaintiff its reasonable attorneys' fees;

l. Award Plaintiff its taxable costs and disbursements in this action;

m. Award pre-judgment and post-judgment interest as allowed by law; and

n. The Plaintiff further prays that the Court grant all other relief to which the Plaintiff may show it is entitled and as this Court deems just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

*/s/ Colin L. Powell*
**COLIN L. POWELL**
State Bar No. 24092984
e-mail: cpowell@hartlinebarger.com

**HARTLINE BARGER LLP**
8750 North Central Expressway, Suite 1600
Dallas, Texas 75231
(214) 346-3790 (Powell Direct Dial)
(214) 267-4290 (Powell Direct Fax)

And

**EMILY M. HAAS**
N.C. Bar No. 39716 (to be admitted Pro Hac Vice)
e-mail: emhaas@michaelbest.com

**MICHAEL BEST & FRIEDRICH LLP**
4509 Creedmoor Road, Suite 501
Raleigh, North Carolina 27612
(984) 220-8745 (Haas Direct Dial)

**ATTORNEYS FOR PLAINTIFF FISERV, INC.**